ANNA ROWLAND *v.* EDWARD W. MAHER, COMMIS-
SIONER OF THE DEPARTMENT OF SOCIAL SERVICES
OF THE STATE OF CONNECTICUT

ETTA TRAVER *v.* EDWARD W. MAHER, COMMISSIONER
OF THE DEPARTMENT OF SOCIAL SERVICES OF THE
STATE OF CONNECTICUT

LOUISE V. LUCAS *v.* EDWARD W. MAHER, COMMIS-
SIONER OF THE DEPARTMENT OF SOCIAL SERVICES
OF THE STATE OF CONNECTICUT

HELEN N. SODERBERG *v.* EDWARD W. MAHER, COM-
MISSIONER OF THE DEPARTMENT OF SOCIAL SERVICES
OF THE STATE OF CONNECTICUT

MADGE TROULAND *v.* EDWARD W. MAHER, COMMIS-
SIONER OF THE DEPARTMENT OF SOCIAL SERVICES
OF THE STATE OF CONNECTICUT

ANNA HARBERG *v.* EDWARD W. MAHER, COMMISSIONER
OF THE DEPARTMENT OF SOCIAL SERVICES OF THE
STATE OF CONNECTICUT

COTTER, C. J., BOGDANSKI, LONGO, SPEZIALE and PETERS, Js.

Argued May 11—decision released August 29, 1978

*Paige J. Everin,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant in each case).

*John A. Berman,* with whom was *Shelagh H. O'Neill,* for the appellees (plaintiff in each case).

SPEZIALE, J. The underlying issue presented on appeal in each of these six companion cases is whether the action of the defendant commissioner, suspending medicaid benefits to the plaintiffs, was illegal in light of controlling federal law.

The relevant facts are the same in all six cases and are undisputed: Each of the six plaintiffs is a resident of the Elim Park Baptist Home, Inc., a nonprofit religious home for the aged in Cheshire. The home requires an entry fee of $2000 and, thereafter, residents are charged a monthly fee for room, board, and medical expenses. The plaintiffs each paid, or had paid by a relative on her behalf, the $2000 entry fee. They all qualified for and received medical assistance under the title XIX "Medicaid"

program (42 U.S.C. § 1396 et seq.) and the medicaid payments were used to meet their monthly medical expenses.

In 1975 and early 1976, medicaid payments to the plaintiffs were suspended by the commissioner of social services. The basis for the suspension was that the $2000 entry fee represented an asset transferred by the plaintiffs without reasonable consideration, and that, pursuant to General Statutes § 17-109 (e),[1] the plaintiffs were not entitled to medicaid benefits until this asset was exhausted, after having been applied toward the cost of care at the appropriate rate. The plaintiffs all appealed the suspension of benefits and requested fair hearings. At each of the hearings, the fair hearing officer upheld the suspension. In support of this conclusion, the memorandum of each of the hearing officers referred to General Statutes § 17-109 (e), and, in addition, alluded to the existence of a life care contract to which General Statutes § 17-116 would be applicable.[2]

---

[1] "[General Statutes] Sec. 17-109. ELIGIBILITY. Any person shall be eligible for an old age assistance award who . . . (e) has not made, within seven years prior to the date of application for such aid, an assignment or transfer or other disposition of property without reasonable consideration or for the purpose of qualifying for an award; provided ineligibility because of such disposition shall continue only for that period of time from date of disposition over which the fair value of such property, together with all other income and resources, would furnish support on a reasonable standard of health and decency . . . ."

[2] "[General Statutes] Sec. 17-116. ELIGIBILITY OF APPLICANT HAVING LIFE CARE CONTRACT. Assistance shall be given under the provisions of this part to any otherwise eligible person in any boarding home or institution although he is being cared for under a life contract or agreement authorized by the bylaws of such home or institution, in the same manner as if there were no contract or agreement; provided (a) the contract or agreement was entered into and such care commenced prior to April 3, 1957, and has continued to the time of application by such person for assistance; (b) the con-

The plaintiffs then appealed the decisions of the fair hearing officers to the Court of Common Pleas. While the appeals were pending before that court, the United States District Court for the District of Connecticut released its decision in *Buckner* v. *Maher*, 424 F. Sup. 366 (D. Conn. 1976), holding that the "transfer-of-assets" rule in § 17-109 (e) of the General Statutes violates the supremacy clause by presuming that assets are available to welfare recipients which are in fact not available. On the basis of the *Buckner* case and of *Morgan* v. *White*, 168 Conn. 336, 362 A.2d 505 (1975), the Court of Common Pleas found that the commissioner had acted illegally in suspending medicaid payments to the plaintiffs and ordered that the plaintiffs be awarded medical assistance and that the Elim Park Baptist Home be reimbursed for any medical services advanced since the suspension which would otherwise have been paid for by the state under the medicaid program. It is from the judgments rendered in those six cases that the defendant has appealed to this court.

tract or agreement is with a charitable institution which operates a home or institution in this state which is tax-exempt; (c) the person is, at the time of application, a resident of such home or institution in this state in accordance with such contract or agreement; (d) the consideration transferred, conveyed or paid over to such home or institution by such person or in his behalf would have been used up prior to the date of application for assistance at, a monthly rate of seventy-five dollars and, if such consideration has not been used up at such rate, such person shall not be eligible for assistance until the consideration has been exhausted in accordance with such rate; and (e) the income of such home or institution from endowments or contributions is insufficient to permit continued performance of the contract or agreement. Awards shall be granted to persons eligible hereunder in an amount not exceeding the rate set by the commissioner for care in comparable facilities, less the per capita share of such income of the home or institution, provided the resources of each applicant or beneficiary shall also be taken into consideration."

Subsequent to the filing of this appeal, the United States Supreme Court summarily affirmed the District Court decision in *Maher* v. *Buckner,* 434 U.S. 898, 98 S. Ct. 290, 54 L. Ed. 2d 184 (1977). The defendant has consequently withdrawn the claim that the reviewing court erred in holding that because Connecticut's transfer of assets rule is inconsistent with applicable federal law, it violates the supremacy clause. The remaining claims pressed by the defendant on appeal are essentially that: (1) the plaintiff in each of the cases has a valid life care contract with the Elim Park Baptist Home and is therefore ineligible for medicaid; and (2) these life care contracts are available assets to the plaintiffs.[3]

It is clear that under applicable federal law only assets *actually available* to a medicaid applicant may be considered in determining eligibility. 42 U.S.C. § 1396a (a) (17) (B); 42 Fed. Reg. No. 9 at 2687–88 (Jan. 13, 1977) (revising 45 C.F.R. § 248.21); *Buckner* v. *Maher,* supra, 373 n.12; *Wilczynski* v. *Harder,* 323 F. Sup. 509 (D. Conn. 1971); *Morgan* v. *White,* supra, 345. In its memorandum of decisions, the Court of Common Pleas acknowledged the reliance of the fair hearing officers on the life care contract statute (General Statutes § 17-116) as well as on the transfer of assets rule (§ 17-109 [e]) as their grounds for sustaining the action of the commissioner. The court emphasized, however, that "even if it [the life care contract provision] did apply to the arrangement at the

[3] The defendant's statement of issues also raises the claim that the court lacked jurisdiction to order reimbursement to the home for medical services advanced to the plaintiffs following the suspension of medicaid payments by the commissioner. Because this claim has not been briefed by either the defendant or the plaintiffs, we treat it as abandoned.

Elim Park Baptist Home — and the court is not so convinced — it would still fall before the primacy clause." We agree.

At the outset, it should be noted that the fair hearing officers should not have included the reference to the life care contract statute in their findings. The suspension of benefits by the commissioner was grounded on § 17-109 (e), the transfer of assets rule, and no evidence was presented at the fair hearings that the plaintiffs had life care contracts within the meaning of § 17-116. The fair hearing officers should have confined themselves to the question of whether the commissioner's action was valid under § 17-109 (e). See *Morgan* v. *White,* supra, 340n. Consequently, we do not decide whether the plaintiffs actually possess life care contracts with the home.

Even if the finding of a life care contract had been properly made, however, it would not withstand attack under *Buckner.* Regardless of the existence of a "life care contract," applicants are entitled to assistance under federal law unless the contract is an asset *actually available* to them. The home in which the plaintiffs reside imposes a monthly charge for medical expenses; the $2000 entry fee cannot be applied by the residents to meet these payments. The funds simply are not actually available to the plaintiffs. Where there is no actual fraud on the part of the medicaid applicants or of the home in which they reside; see General Statutes § 17-83i; the commissioner cannot deny benefits on the basis of an irrebutable presumption that anyone who possesses what is allegedly a life care contract has funds which are actually available to meet medical expenses. See *Salemma* v. *White,* 175 Conn. 35, 39–41, 392 A.2d 969 (1978).

It is thus clear that controlling federal law precludes the commissioner from denying or suspending medicaid benefits merely on the basis of the existence of a life care contract. To the extent that § 17-116 of the General Statutes deprives a person holding a life care contract of medical assistance on any ground other than the actual availability of assets, it must fall before the supremacy clause.

There is no error.

In this opinion the other judges concurred.