STATE OF CONNECTICUT *v.* JOHN S. MURTHA,
EXECUTOR (ESTATE OF ANNA M. AHERN),
ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued November 14, 1979—decision released January 15, 1980

*Joseph A. Hourihan,* with whom, on the brief, were *Richard P. Heffernan* and *Stephen J. Duffy,* for the appellants (defendants Vera Sullivan et al.).

*Robert K. Beck,* for the named defendant.

*Wendell S. Gates,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (state).

COTTER, C. J. The parties have stipulated as to the relevant facts: The defendant Vera Sullivan, in 1966, applied and qualified for assistance under title XIX of the Social Security Act, "Grants to States for Medical Assistance Programs." 42 U.S.C. §§ 1396–1396k. Since that time she has been confined to a nursing home and has been receiving aid under the title XIX program. In Connecticut, title XIX is administered by the commissioner of income maintenance; General Statutes § 17-134a; and as a condition of eligibility for assistance under the program, a person's assets and income must be extremely limited. General Statutes § 17-134b; Connecticut State Department of Income Maintenance Manual, Volume III, supplement D-2, index No. D-244.1, p. 4.

Anna M. Ahern died on August 5, 1977, leaving a will under the terms of which the bulk of her estate was left in the residuary clause in equal amounts to the defendant legatees: her sister Vera Sullivan, her grandnephew Richard Hartford, and her grandniece June Tyburski. Vera Sullivan, on December 1, 1977, executed a disclaimer of her interest in Anna Ahern's estate. If the disclaimer were effective, Sullivan's one-third interest in the residue of the estate—approximately $60,000 after

the payment of administration expenses, taxes, and outstanding debts—would be divided by the other two residuary beneficiaries, Hartford and Tyburski.

This is an appeal by the defendants[1] Sullivan, Hartford and Tyburski from a judgment of the Superior Court which adjudged that the disclaimer filed by Sullivan was invalid and of no effect as to the state's claims against her for assistance granted or being granted under title XIX. The defendant legatees' claims of error raise two interrelated questions: (1) whether the disclaimer filed by Sullivan is invalid; and (2) if it is invalid, what claims does the state have against Sullivan under pertinent state and federal statutes.

## I

The state maintains that the defendant Sullivan's disclaimer is barred by General Statutes § 17-82j which reads in pertinent part: "If any person receiving an award [under chapter 302, part IV, Medical Assistance Program[2]] . . . receives property, wages, income or resources of any kind, such person or beneficiary, within fifteen days after obtaining knowledge of or receiving such property, wages, income or resources, shall notify the commissioner thereof in writing. No such person or beneficiary shall sell, assign, transfer, encumber or otherwise dispose of any property without the consent of the commissioner."

---

[1] The named defendant, John S. Murtha, is the executor of the estate of the decedent and his interest in this action is that of a stakeholder.

[2] Section 17-82j is applicable to part IV of chapter 302 because of § 17-134e, which reads: "All of the provisions of this chapter are extended to the medical assistance program except such provisions as are inconsistent with federal law and regulations governing Title XIX of the Social Security Amendments of 1965 and this part."

The defendant legatees do not contend that a disclaimer is not a disposition of any property within the purview of the language of § 17-82j; nor do they assert that Sullivan notified the commissioner or gained his consent before executing a disclaimer as to her interest in the estate of her sister. Instead, they maintain that since the language of the disclaimer provision is clear and unequivocal that a "disclaimer shall relate back for all purposes to the date of death of the decedent"; General Statutes § 45-302; that language should be given effect in this case so that Sullivan cannot be deemed to have received property which required her to notify the state under § 17-82j. As corollaries to this argument, they maintain that the legislature had an opportunity to make exceptions, if it saw fit, to the absoluteness of the language in § 45-302, and it elected not to do so and that the statutory provision which describes circumstances when the right to disclaim is barred, § 45-303, is inapplicable to the present case.

The defendants' argument, however, overlooks the fact that § 17-82j was enacted by Public Acts 1969, No. 730 in 1969 while the disclaimer provisions, §§ 45-299—45-312a, were adopted by Public Acts 1972, No. 62 in 1972. There is a presumption that the legislature, in enacting a law, does so with regard to existing relevant statutes so as to make one consistent body of law. *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491; *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66; *State* v. *Jordan,* 142 Conn. 375, 378, 114 A.2d 694. If two statutes appear to be repugnant, they are to be construed, if reasonably possible, so that both are operative. *Farms Country Club, Inc.* v. *Carini,* 172 Conn. 439, 444, 374 A.2d 1094; *State* v. *White,*

169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399; *Cicala v. Administrator,* supra.

In light of these two well-established principles of statutory construction, the language of § 45-302 that a "disclaimer shall relate back for all purposes to the date of death of the decedent" must be considered as operative only when there is no bar to the disclaimer such as exists in § 17-82j. The propriety of this construction of the two statutes is underscored by the enactment of § 45-303 which lists a number of actions by a beneficiary which would serve to bar a right to disclaim. There is no intimation in § 45-303 that the actions described in § 45-303 form an exclusive list of the circumstances barring a disclaimer. In fact, § 45-312, another provision in chapter 798, "Disclaimer of Estate Property," bars disclaimers from thwarting the collection of succession taxes.

The defendants contend, however, that when other state legislatures have sought to limit the right to disclaim in these circumstances, those legislatures have added to the language of provisions comparable to General Statutes § 45-303. The defendants point to Minnesota Statutes § 525.532, subdivision 6, which reads: *"The right to disclaim otherwise conferred by this section shall be barred if the beneficiary is insolvent at the time of the event giving rise to the right to disclaim.* Any voluntary assignment or transfer of, or contract to assign or transfer, an interest in real or personal property, or written waiver of the right to disclaim the succession to an interest in real or personal property, by any beneficiary, or any sale or other disposition of an interest in real or personal prop-

erty pursuant to judicial process, made before he has filed a disclaimer, as herein provided, bars the right otherwise hereby conferred on such beneficiary to disclaim as to such interest." (Emphasis added.) The defendants' reliance on the Minnesota statute is misplaced. In view of the existence of § 17-82j at the time of the enactment of chapter 798, "Disclaimer of Estate Property," in 1972, it was not necessary to add to the language of § 45-303 to protect taxpayers in Connecticut against the possibility that someone might seek to disclaim an inheritance in order to remain eligible for public assistance.[3]

Since § 17-82j serves to bar Sullivan's disclaimer, her interest in her sister's estate must be considered to have vested at the date of her sister's death. "It is a well settled rule of construction that a legacy given to a person or a class, to be paid or divided at a future time, takes effect in point of right on the death of the testator." *Dale* v. *White,* 33 Conn. 294, 296. Connecticut law has favored early vesting. *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 277, 161 A. 341; *Blodgett* v. *New Britain Trust Co.,* 108 Conn. 715, 719, 145 A. 56.

## II

The state also claimed, and the trial court upheld its claim, that General Statutes § 17-83e created an encumbrance on Sullivan's interest in her sister's estate. Section 17-83e reads in pertinent part: "If a beneficiary of aid under this chapter has or

---

[3] Similarly, the defendants' reliance on case law from other jurisdictions is inappropriate because those cases do not involve either the statutory provisions or the circumstances in the present case. The defendant has not cited a case where the person disclaiming was the recipient of public assistance.

acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid to him or in his behalf under said chapter." It is clear, however, under controlling federal law that the state cannot employ § 17-83e to create a lien on Sullivan's interest in her sister's estate.

Connecticut has elected to participate in Medicaid, a cooperative federal-state program established by title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396k. By virtue of its participation in the title XIX program, Connecticut receives substantial federal funds and, in turn, agrees to comply with the program requirements in title XIX and with the regulations promulgated by the Secretary of Health, Education and Welfare. See General Statutes §§ 17-134a and 17-134e. If a state statute conflicts with federal provisions, under the supremacy clause, federal law must control. *Rowland* v. *Maher,* 176 Conn. 57, 63, 404 A.2d 894; *Morgan* v. *White,* 168 Conn. 336, 343–44, 362 A.2d 505.

Section 1396a (a) (18) of 42 U.S.C. reads in pertinent part: "(a) A State plan for medical assistance must— . . . (18) provide that no lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the plan . . . and that there shall be no adjustment or recovery . . . of any medical assistance correctly paid on behalf of such individual under the plan." The text of 42 U.S.C. § 1396a (a) (18) indicates that the

design of the statute is to prohibit, or strictly to limit in circumstances not applicable to the stipulated facts of the present case, efforts by states to recoup from beneficiaries under title XIX amounts paid for medical assistance to those beneficiaries during their lifetimes and also to prevent a participating state from recovering for any assistance correctly paid even from the estates of the beneficiaries. Accord, *Sasse* v. *Ottley,* 432 F. Sup. 440, 442-44 (S.D.N.Y.); *Wilczynski* v. *Harder,* 323 F. Sup. 509, 516 (D. Conn.).. Thus, the state is precluded from seeking restitution, pursuant to a lien created under General Statutes § 17-83e, of any funds correctly expended on Sullivan's behalf under the title XIX program during her lifetime.

Nonetheless, in light of our previous conclusion that Sullivan's disclaimer is invalid, the state may, pursuant to General Statutes §§ 17-82d, 17-134b, 17-134d and 17-134e, reassess her eligibility for assistance under title XIX and state guidelines. See *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 425 A.2d 553. Such a reassessment is not barred by 42 U.S.C. § 1396a (a) (18). Nor does 42 U.S.C. § 1396a (a) (18) bar the state from imposing a lien on Sullivan's estate for assistance incorrectly paid on her behalf, for example, when she was not eligible for such assistance. In the absence, however, of any determination by the state that Sullivan is or had been ineligible for medical assistance under title XIX, we need not at this point decide whether the fact that Sullivan's interest in her sister's estate vested as of December 5, 1977, was sufficient at that time to satisfy title XIX's requirement that only assets actually available to a medical assistance recipient may be considered in determining eligibil-

ity for title XIX aid. 42 U.S.C. § 1396a (a) (17) (B) ; 45 C.F.R. § 248.3 (b) (1), recodified and redesignated as 42 C.F.R. § 448.3 (b) (1) (Sept. 30, 1977).

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.