[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal pursuant to Connecticut General Statutes Section 4-183 as authorized by Connecticut General Statutes Section 17-2b. Section 4-183
provides as follows:
 A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section.
Connecticut General Statutes Section 17-2b (b) provides as follows:
 The applicant for (an administrative fair hearing), if aggrieved, may appeal therefrom in accordance with Section 4-183.
The parties do not dispute the fact that the petitioner, Dorothy Verde and Attorney James F. Dutton, Jr., her Conservator, are aggrieved parties.
Many of the facts that give rise to this appeal, as found on the record below, are not in dispute. On December 4, 1989 the petitioner submitted an application for Medicaid. On March 20, 1990, the Department of Income Maintenance (hereinafter referred to as "Department") found eligibility for the month of December 1989, denied eligibility for January 1990 and found eligibility for February 1990. Eligibility was denied for January 1990 because the applicant held assets over the eligibility limit. The Fair Hearing Officer made the following findings of fact:
1. A Medicaid application was initiated on the appellant's behalf on December 4, 1989.
2. The appellant is a resident of a long term care facility, Fairlawn Convalescent Home.
3. The appellant's assets at the time of application CT Page 9101 consisted of a Savings Society checking account and savings account.
4. The appellant's checking account was closed on December 7, 1989 and the finding balance of $1,297.66 was deposited into her savings account.
5. The appellant's conservator withdrew $1,829.05 from this account on December 7, 1989 and purchased an irrevocable pre-need trust agreement from Church Allen Funeral Services for the appellant.
6. The appellant's bank accounts were accessible assets despite the final accounting which had been submitted to Probate Court by her conservator.
7. The balance in the appellant's savings account on December 31, 1989 was $1,608.26, which included $8.26 interest posted on the account.
8. No withdrawals were made from the appellant's savings account in January 1990 during which time it accrued additional interest.
9. The balance in the appellant's savings account on January 31, 1990 was $1,923.45.
10. The savings account was closed on February 16, 1990 with the balance ($2,245.23) being paid to the facility.
11. The appellant's Title XIX medical assistance was properly granted for the month of December 1989 and with a subsequent effective date of February 1, 1990.
The Fair Hearing Officer found the following provisions of the Department's Uniform Policy Manual to be relevant.
 Uniform Policy Manual Section 4005.05 provides the general principles regarding asset limits. "The Department compares the assistance unit's equity in counted assets with the program asset limit when determining whether the unit is eligible for benefits."
 Ibid., Section 4005.10 sets the asset limit for a needs group of one for the MAABD program at $1,600.00.
CT Page 9102
 Ibid., Section 4005.15 A.2. regarding the reduction of excess assets for applicants of the medical assistance program states "at the time of application, the assistance unit is ineligible until the first day of the month in which it reduces its equity in counted assets to within the asset limit".
 Ibid., Section 4030.05 speaks to the treatment of bank accounts and checking accounts as specific types of assets. Ibid., Section 5050.21 addresses dividends, interest, trusts and royalties as specific types of income. These are considered "as unearned income when it is paid or could be paid to a member of the assistance unit". Interest "payments which are reinvested or left to accumulate along with the principal are: 1. counted as income in the month in which they are initially payable to the unit; and 2. treated as part of the asset after the initial month they could have been paid to the unit".
 Ibid., Section 1560.10 speaks to beginning dates of assistance for the Medicaid program. The beginning date may be "the first day of the month of application when all non-procedural eligibility requirements are met during that month".
The Department's Uniform Policy Manual has the force of regulation. Richard v. Commissioner of Income Maintenance,214 Conn. 601, 573 A.2d 712 (1990). Manual Index Section 4005.10 provides in part as follows:
 1. If the assistance unit had excess assets, do not grant assistance to the effective prior to the first day of the month in which the unit properly reduces its asset to an amount equal to or less than the appropriate asset limit.
Manual Index Section 4005.10.B sets the applicable asset level at $1,600.00.
The Manual in question governs both policy and procedure to be followed.
Manual Section 4005.15.A.2 provides as follows: CT Page 9103
 At the time of application, the assistance unit is ineligible until the first day of the month in which it reduces its equity in counted assets to within the asset limit.
The petitioner claims in the instant appeal that the Department violated the standards set forth in Connecticut General Statutes Section 14-183 (j). The petitioner further claims that the Department's policies and practices are in total disregard of, and in conflict with the laws of Probate and procedures of the Probate Court.
LAW
A number of Connecticut cases have discussed the factors to consider in determining when a person is eligible for Medicaid assistance. In Marcus' Appeal from Probate, 199 Conn. 524
(1986) the court on page 532 stated in part as follows:
 Under applicable federal guidelines, the department of income maintenance must determine eligibility for medicaid assistance by "taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient. . . ." 42 U.S.C. § 1396a(a)(17)(B).
In Clark v. Commission, 209 Conn. 390 (1988) the issue was whether income "available" to an institutionalized incompetent for Medicaid eligibility purposes includes an amount a Probate Court has ordered the incompetent to pay his at-home spouse.
The Clark court at pages 394, 396, 397, 403, stated in part as follows:
 . . . The federal medicaid program, established by Congress in 1965, "provid(es) federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784, reh. denied, 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980); 42 U.S.C. § 1396 et seq. Although states participate voluntarily, a state electing to participate must develop a plan, approved by CT Page 9104 the secretary of health and human services, containing "reasonable standards . . . for determining eligibility for and the extent of medical assistance. . . ." 42 U.S.C. § 1396a(a)(17). . . .
 . . . The legislature, by General Statutes Section 17-134a, has authorized the commissioner of income maintenance to administer Connecticut's medicaid program. Our statutes further provide that "(a)ll of the provisions of this chapter are extended to the medical assistance program except such provisions as are inconsistent with federal law and regulations governing Title XIX of the Social Security Amendments of 1965 and this part." General Statutes Section 17-134e. "Thus, the legislature recognized the primacy of the applicable federal provisions and this court must be guided by those provisions. Stated in another way, the federal statutes and regulations set a limit upon the authority of the commissioner as well as furnishing a guide to his administration of the program. Morgan v. White, 168 Conn. 336, 343-44, 362 A.2d 505 (1975).
 In determining an individual's eligibility for medicaid benefits, the commissioner may take "into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary (of health and human services), available to the applicant or recipient. . . ." (Emphasis added.) 42 U.S.C. § 1396a(a)(17)(B). . . .
 . . . The principle of availability "has served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients.
A. Standard of Review
In discussing the standing of judicial review of CT Page 9105 administrative agency rulings the court in State Medical Society v. Board of Examiners of Podiatry, 208 Conn. 709, 717 (1988) stated in part as follows:
 The standard of judicial review of administrative agency rulings is will established. Section 4-183 (g) permits modification or reversal of an agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or question of fact.
B. Aggrievement
The UAPA allows an "aggrieved" person to appeal from a final decision of an agency. Connecticut General Statutes Section 4-183 (a), as amended by ConnecticutPublic Act No. 88-317, Section 23 (eff. July 1, 1989). The party claiming to be aggrieved must first "demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole," and second, must "establish that this specific personal and legal interest has been specially and injuriously affected by the decision." State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295,299-300 (1987). A person who has been denied Medicare benefits is an aggrieved person within the statute in that a specific, personal and legal interest has been adversely affected. Therefore the plaintiffs are aggrieved.
The respondent Department, in its Brief dated January 8, 1991, argues in part as follows:
The Department Complied with Its Regulations CT Page 9106
The Fair Hearing Officer found the Department complied with its regulations. The applicant did not meet the asset limit set forth under Manual Index Section 4005.10.B, supra. The record indicates the Department complied with Section 4005.10.B. Because the applicant was over asset, Manual Index Section 4005.15.A.2, supra, required the Department to deny eligibility until the first day of the month in which the applicant reduced such asset below the prescribed level. The record indicates the Department acted in compliance with Section 4005.15.A.2.
 The Department's compliance with its regulation does not give rise to the threshold for the court to reverse the contested decision. Burnham v. Administrator, 184 Conn. 317, 322, 439 A.2d 1008 (1981); Riley v. State Employee's Retirement Commission, 178 Conn. 438, 441, 423 A.2d 87 (1979). A bright line and specifically ascertainable standard can yield harsh results, but such results should not be mistaken for unfair practices. The standard is clear, has the force of regulation and requires no discretion by the Department. The court can not conclude the Department violated the standards set forth in Conn. Gen. Stat. Section 4-183 (j).
 B. The Rules and Practices of Probate Court Are Not In Conflict with the Department's Regulations
 The issue raised by the petitioner pertaining to the Rules and Practices of Probate Court is irrelevant to this administrative appeal. Petitioner puts forward an unsupported claim that the applicant was barred from complying with Manual Index Section 4005.10.B, supra because the applicant had filed a final accounting pursuant to terminating his role as a conservator of the applicant. Rec., Vol. II at 5. Petitioner claims on brief that he is "mandated" to follow the steps prescribed by the Probate Court. Petitioner's Br. at 10. Petitioner CT Page 9107 misconceives the issue in this administrative appeal. The issue is not whether the Probate Court can require a final accounting, but whether the Department must consider it when making an eligibility determination.
 Clark v. Commissioner, 209 Conn. 390, 397, 551 A.2d 729 (1988), is a similar case. In Clark, the court held the Commissioner of the Department of Income Maintenance is not required to consider a Probate Court order where no provisions for such a disregard is authorized by the Department's regulations. Clark involved a court ordered spousal support payment, the amount of which the applicant sought to exclude from his Medicaid eligibility determination. Id. at 393. Plaintiff's claim was dismissed because, despite the probate court order, such funds were available to the applicant given the existing regulations of the Department. Id. at 407.
 In another case, State v. Goggin, 208 Conn. 606, 618, 546 A.2d 250 (1988), the court held the Commissioner of the Department was not bound to use the sale price set by the Probate Court order which was not at the fair market value required by the Department's regulations. The court found that despite a final, unappealed Probate Court decree the Department is obligated to enforce its regulations when making eligibility determinations. Id. at 615. Even if the issue is relevant, petitioner has not shown in this administrative appeal that such a mandate or bar existed. Here the petitioner claims bound by the submission of a final accounting, including a proposed distribution of asset. This claim was made during the fair hearing. Rec. Vol. II at 8. The Fair Hearing officer considered, but did not accept the petitioner's position. Id., Vol. I at 2. The Officer concluded from the record that: "As a matter of fact, these assets (a checking account and a savings account) were shown to be quite accessible as the conservator closed the appellant's checking CT Page 9108 account and subsequently withdrew and expended funds from her savings account prior to receiving the Probate Court's final approval and decree on January 29, 1990. Id."
The issue involved in State v. Goggin, surpa, was whether the state could seek reimbursement of Medicaid benefits paid to an incapable person whose estate had transferred an interest in certain real property prior to applying for public assistance on behalf of that individual.
The dispositive issue in this case is whether assets that are in an estate (the savings account with various balances between $1,608.26 and $2,245.23) should be considered as an available asset in determining eligibility where the asset is involved in Probate.
In rendering the decision the Fair Hearing officer referred to various relevant departmental policy as previously stated. Further the Fair Hearing Officer made a specific finding (Paragraph 6) that the bank accounts were accessible assets despite the final accounting which had been submitted to Probate Court by her conservator.
Courts may take judicial notice of regulations. State v. Vachon, 140 Conn. 478, 484 (1953); Squires v. Wolcott,133 Conn. 449, 453 (1947). This court has accordingly taken judicial notice of additional sections of the 1987 Uniform Policy Manual of the Department of Income Maintenance. Department Manual Section 4015.05 dealing with treating inaccessible assets provides in part as follows:
 4. If the asset is determined to be inaccessible, do not count the unit's equity in the asset as long as the asset remains inaccessible.
Section 4015.05.A.1 provides as follows:
 Subject to the conditions described in this section, equity in an asset which is inaccessible to the assistance unit is not counted as long as the asset remains inaccessible.
Section 4015.05.B Responsibilities of Assistance Unit provides in part as follows:
1. The burden is on the assistance unit to CT Page 9109 demonstrate that an asset is inaccessible.
Section 4015.05.C Types of Inaccessible Assets provides in part as follows:
 Assets considered inaccessible to the assistance unit include, but are not limited to: (1) property in probate
Section 4015.05.B Responsibilities of Assistance Unit Section 2 provides: "For all programs except Food Stamps, in order for an asset to be considered inaccessible, the assistance unit must cooperate with the Department, as directed, in attempting to gain access to the asset. (a) If the unit does not cooperate as described above, the asset is considered available to the unit, and the unit's equity in the asset is counted toward the asset limit."
There is no evidence in the record that the applicant has failed to cooperate with the Department in attempting to gain access to the asset from the Probate Court.
The Department has adopted a manual approved by the Secretary of Health and Human Resources that contains "reasonable standards for determining eligibility for and the extent of medical assistance." Those standards provide in Section 4015.05 that inaccessible assets are not to be counted toward the asset limit. Inaccessible assets include property in Probate. The bank account in question is in Probate. There is no evidence in the record that the applicant has failed to cooperate with the Department, as directed, in attempting to gain access to the asset. The asset therefore may not be considered as available to the applicant in determining eligibility for Medicaid assistance.
ORDER
The decision of the Department is set aside and the Department is ordered to find the applicant eligible for Medicaid assistance for January 1990.
AXELROD, JUDGE