[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
 I. INTRODUCTION
The captioned matter is an appeal from a decision by the defendant, the commissioner of the department of social services ("commissioner"), which found that Albert Elgert, a ward of the plaintiff, made a transfer of assets without receiving fair market value[1] which caused a deferral of Elgert's eligibility for medicaid benefits. The plaintiff admits that a portion of the subject transfer was not for fair market value, but she claims that the remainder of the transfer was for fair market value. Accordingly, the plaintiff seeks a recalculation of the period of Elgert's deferred eligibility.
 II. FACTS
The following facts are not in dispute. On June 28, 1999, Elgert purchased an annuity ("the annuity") for $91,131.74. (Return of Record ("ROR"), pp. 177-79.) The annuity provides benefits to Elgert for the lesser of his life or ten years. Should Elgert die before receiving benefits for ten years, Elgert's survivor annuitant will receive those benefits for the remainder of said ten-year period.[2] On August 22, 2000, Elgert became institutionalized. (ROR, p. 3.) On November 24, 2000, Elgert applied to the commissioner for medicaid benefits. (ROR, p. 145.) A hearing on Elgert's application was held (ROR, p. 1), and in a decision dated January 23, 2002, the commissioner's hearing officer found, inter alia, the following facts: "(1) On June 28, 1999, [Elgert] purchased a 10-year annuity for $91,131.74. This annuity pays [Elgert] $936.83 per month. This annuity is unassignable and inaccessible. This annuity purchase constitutes a transfer of assets without receipt of fair value. . . . (3) The $91,131.74 in transferred assets used to purchase the annuity on June 28, 1999 results in a period of ineligibility of 12.32 months. This penalty period calculation includes that portion of the annuity considered to be a principal amount returned to [Elgert]." CT Page 2790-x (ROR, p. 2.)
 III. DISCUSSION
The plaintiff acknowledges that his payment of that portion of the purchase price of the annuity which funded benefits to Elgert's survivor annuitant was a transfer of assets which did not produce fair market value to Elgert and should, therefore, result in Elgert's deferred eligibility. (Plaintiff's Brief, p. 2.) On the other hand, the plaintiff argues that the portion of the purchase price which funded benefits to Elgert was a transfer for fair market value, so that Elgert's eligibility should not be deferred with respect to that portion of the purchase price. (Plaintiff's Brief, p. 19.) Determination of that issue requires a review and analysis of the federal and state statutory and regulatory schemes concerning medicaid eligibility.
In Burniskas v. Department of Social Services, 240 Conn. 141, 148,691 A.2d 586 (1997), our Supreme Court described Connecticut's medicaid program as follows:
The medicaid program, established in 1965 as Title XIX of the Social Security Act, and codified at 42 U.S.C. § 1396 et seq., is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care. . . . States participate voluntarily in the medicaid program, but participating states must develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance. . . . Connecticut has elected to participate in the medicaid program and has assigned to the department the task of administering the program. . . . The department, as part of its uniform policy manual, has promulgated regulations governing the administration of Connecticut's medicaid system.
(Citations omitted; internal quotation marks omitted.) Id.
The section of the Social Security Act ("Act") which is at the core of the dispute in this case is 42 U.S.C. § 1396p (c)(1)(A), which obligates participating states to penalize applicants for medicaid if they transfer assets for less than fair market value, as follows: "In order to meet the requirements of this subsection for purposes of section 1396a (a) (18) of this title, the State plan must provide that if an institutionalized individual . . . disposes of assets for less than fair market value on or after the look-back date specified in subparagraph (B)(i), the individual is ineligible for medical assistance for services CT Page 2790-y described in subparagraph (C)(i) . . . during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E)." 42 U.S.C. § 1396p (c)(1)(A).
Pursuant to 42 U.S.C. § 1396p (c)(1)(B): "The look-back date specified in this subparagraph is a date that is 36 months . . . before the date" on which an individual applies for medicaid benefits. Because Elgert purchased the annuity within the 36 months preceding his application for medicaid benefits, the annuity purchase was within the look-back period. Accordingly, any portion of the purchase price paid for the annuity which did not provide fair market value to Elgert required a deferral of his eligibility for a period calculated in accordance with the Act.
Although the Act delegates to participating states the authority to develop plans for eligibility, 42 U.S.C. § 1396p (c)(4) limits that authority, as follows: "A State . . . may not provide for any period of ineligibility for an individual due to transfer of resources for less than fair market value except in accordance with this subsection. "
Connecticut's plan for its medicaid program begins with General Statutes § 17b-2, which provides, in relevant part: "The Department of Social Services is designated as the state agency for the administration of . . . (8) the medicaid program pursuant to Title XIX of the Social Security Act. . . ." General Statutes § 17b-3 (a) authorizes the commissioner to adopt regulations for the implementation of all programs administered by the department, as follows: "The Commissioner of Social Services shall administer all law under the jurisdiction of the Department of Social Services. The commissioner shall have the power and duty to do the following . . . (2) adopt and enforce regulations, in accordance with chapter 54, as are necessary to implement the purposes of the department as established by statute. . . ."
Pursuant to the authority contained in General Statutes § 17-3 (a), the commissioner has promulgated a uniform policy manual ("UPM") which, in Burniskas v. Department of Social Services, supra, 240 Conn. 148, the court said constituted a set of regulations. Section 3028.30 of the UPM provides, in relevant part: "Compensation in exchange for a transferred asset is counted in determining whether fair market value was received. . . . When an asset is transferred, compensation is counted when it is received at the time of the transfer or any time thereafter."
One of the commissioner's arguments is that, because Elgert did not receive all benefits provided by the annuity simultaneous with his payment of the purchase price, Elgert did not receive fair market value. CT Page 2790-z (Defendant's Brief, pp. 11-14.) However, the above excerpt from § 3028.30 of the UPM clearly establishes that deferred consideration can constitute fair market value. Consequently, Elgert's purchase of the annuity was not without fair market value simply because the consideration flowing to him was deferred.
42 U.S.C. § 1396p (d)(3)(B) provides that, under certain circumstances, the eligibility of a medicaid applicant may be deferred because of payments made by the applicant to a trust. 42 U.S.C. § 1396p
(d)(6) provides: "The term `trust' includes any legal instrument or device that is similar to a trust but includes an annuity only to such extent and in such manner as the Secretary [of Health and Human Services ("Secretary")] specifies." The parties have stipulated that the Secretary has taken no action to specify anything with regard to annuities.
In spite of the fact that the Secretary has not acted in regard to annuities, § 4030.80A of the UPM states, in relevant part: "The term `trust' includes any legal instrument or device like a trust, such as an annuity." Based on § 4030.80A of the UPM, the commissioner argues that Elgert's annuity is a trust, so that Elgert must lose eligibility for a period based on the amount of the entire purchase price of the annuity.
To the extent that § 4030.80A of the UPM, in the absence of any action by the Secretary, designates an annuity as a trust for purposes of determining eligibility for medicaid, that provision contradicts42 U.S.C. § 1396p (d)(6) and is therefore in direct violation of42 U.S.C. § 1396p (c)(4) which prohibits states from establishing, except in conformity with the Act, periods of ineligibility. "The federal government shares the costs of medicaid with those states that elect to participate in the program, and, in return, the states are required to comply with requirements imposed by the medicaid act and by the secretary of the Department of Health and Human Services." (Citations omitted.)Ahern v. Thomas, 248 Conn. 708, 713, 733 A.2d 756 (1999); see alsoPersico v. Maher, 141 Conn. 384, 393, 465 A.2d 308 (1983) (federal statutes and regulations set limits upon the authority of the commissioner and "[furnish] a guide to the state's administration of the Medicaid program"); Morgan v. White, 168 Conn. 336, 344, 362 A.2d 505
(1975) ("where the state sets stricter standards for eligibility than those enumerated by the pertinent federal law, the state standards are tacitly inconsistent with those federal provisions"). In Persico v.Maher, supra, 141 Conn. 392-93, the court also said: "Pursuant to [the Act], the secretary [of Heath and Human Services] has promulgated regulations which are binding upon the states. . . . We conclude that . . . [the portion of the state plan under attack] does not meet the CT Page 2790-aa federal requirements and is, therefore, void."
From Ahern, Morgan and Persico, it is clear that attempts by the commissioner to establish eligibility requirements for medicaid which are stricter than those authorized by the Act are ineffective. Accordingly, the hearing officer's reliance on § 4030.80A of the UPM as authority for treating Elgert's annuity as a trust was an error of law. Because Elgert's annuity is not an eligibility disqualifying trust, the transaction by which Elgert purchased the annuity must be judged by the fair market value test. In that regard the record shows that no evidence was introduced before the hearing officer which could support a finding that the value of Elgert's annuity was less than its purchase price, and no such finding was made. Accordingly, it cannot be said that the payment of the entire purchase price for Elgert's annuity was a transfer without fair market value.
As noted above, the plaintiff has acknowledged that a portion of the purchase price paid for the annuity benefited Elgert's survivor annuitant, and not Elgert, so that the portion of Elgert's expenditure which benefited the survivor annuitant was a transfer without fair market value to Elgert. Therefore, Elgert must be penalized by a period of ineligibility which is measured by the portion of the purchase price which funded the survivor annuitant benefits.
 IV. PREJUDICE
Having been wrongfully denied medicaid benefits to which he is entitled, substantial rights of Elgert (and of the plaintiff, his conservator) have been prejudiced by the commissioner's decision, which is based on an error of law.
 V. CONCLUSION
The appeal is sustained, and the case is remanded to the commissioner to determine the portion of the purchase price of Elgert's annuity which funded benefits for Elgert's survivor annuitant and to recalculate Elgert's period of ineligibility based on that portion of the purchase price.