ROSALIA BRENGOLA-SORRENTINO, Plaintiff-Appellant, v. THE DE-PARTMENT OF PUBLIC AID et al., Defendants-Appellees.

First District (2nd Division)   No. 83—3076

Opinion filed December 18, 1984.

Hayt, Hayt & Landau, of Evanston (Ann L. Abbott, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Owen M. Field, Special Assistant Attorney General, of counsel), for appellees.

JUSTICE PERLIN delivered the opinion of the court:

In July 1982, while a patient at Swedish Covenant Hospital, Rosalia Brengola-Sorrentino (plaintiff) applied for financial assistance under the Aid to the Medically Indigent Program (AMI) of the Public Aid Code (Code) (Ill. Rev. Stat. 1981, ch. 23, par. 7—1 *et seq.*). Plaintiff was then a visitor to the United States from her native Italy. She resided with her daughter and son-in-law at the time of her illness.

Upon receipt of her application, the Cook County Department of Public Aid (county department) mailed to plaintiff a request for financial verification and for an interview. Because plaintiff was still hospitalized and not fluent in the English language, her daughter telephoned the county department, and spoke with the caseworker assigned to plaintiff's case. The daughter advised the caseworker that plaintiff had no insurance or other assets and that plaintiff's bank account in Italy had been closed. Plaintiff's sole income was approximately $450 per month from her deceased husband's Italian pension program.

Following the telephone interview with plaintiff's daughter, the county department mailed to plaintiff a form requesting documentation of the status of plaintiff's bank account(s). In response, plaintiff's son-in-law (Wlandis) forwarded to the county department a statement from the Chicago branch of the National Bank of Greece, which stated that Wlandis had an account there with the balance of some $6,600. Wlandis enclosed a  handwritten statement which advised in part:

"Mrs. Rosalia Brengola-Sorrentino had from [her daughter and son-in-law] the sum of $7,000 as a gift to be used for her hip replacement surgery. *** [S]he spent only $2,000.00 as follows:

* * *

The [remaining] $5,000.00 are kept by me in my checking account."[1]

In August 1982, the county department denied plaintiff's application for benefits under AMI, finding that "the value of your assets exceeds the maximum allowed by agency standards."

Plaintiff appealed the denial of the county department to the Illinois Department of Public Aid (Department) (Ill. Rev. Stat. 1981, ch. 23, par. 11—8 et seq.). At the administrative hearing held on her appeal, plaintiff was not present, but she was represented by counsel and Wlandis was also present. At that hearing the caseworker explained that under Department regulations, plaintiff would be eligible for AMI only in the event she had "non-exempt assets" of less than $400. The caseworker concluded that the documents provided by Wlandis and his verbal statements to her demonstrated that plaintiff had "available" to her the $5,000 gift from Wlandis and his wife, and, therefore, plaintiff was not financially eligible for AMI.

Wlandis testified that the account at the National Bank of Greece was in his own name only, and that he had intended to give the money therein to his mother-in-law only in the event no other funds were available to her to help defray medical expenses. Wlandis also stated that he had paid several thousand dollars in medical bills incurred by his mother-in-law on previous occasions and that plaintiff's present outstanding medical bill totalled $15,000. Following this testimony, plaintiff's attorney argues that the money allegedly given plaintiff by Wlandis should not be considered by the Department to be plaintiff's asset. He urged that the money was not a "legal" gift, because there was no evidence that, under Illinois law, a valid inter vivos gift had occurred. Plaintiff's attorney contended that the Department could not properly conclude that those funds were, in fact, an asset available to plaintiff.

In September 1982, the Illinois Department affirmed the decision of the county department and found plaintiff ineligible for AMI. Plaintiff filed a complaint for administrative review in the circuit court. The trial court affirmed the Department's decision, and plaintiff filed a timely notice of appeal.

Plaintiff contends that: (1) the Department's determination that she was ineligible for AMI benefits because she had resources available to her in excess of $400 was against the manifest weight of the

---

[1]It appears that plaintiff's hospitalization in the present case was due to a hip infection which set in following her hip replacement surgery.

evidence; (2) the Department's regulations governing eligibility for AMI are contrary to the provisions of the Code; and, (3) the Department's policy which allows AMI applicants to "reduce" their "excess assets" while their application is pending violates equal protection.

Before weighing plaintiff's contentions, it is helpful to review portions of the Code and Department regulations issued thereunder. Among the purposes of the Illinois Public Aid Code is "the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all people of this State." (Ill. Rev. Stat. 1981, ch. 23, par. 1—1.) The Code establishes several types of programs for assisting needy persons; AMI is one such program.

Article VII of the Code encompasses the AMI program. Section 7—1 therein provides, in part:

"Eligibility requirements. Aid in meeting the costs of necessary medical *** care, or burial shall be given under this Article to or on behalf of any person who meets the eligibility conditions of Sections 7—1.1 through 7—1.4 ***." (Ill. Rev. Stat. 1981, ch. 23, par. 7—1.)

Section 7—1.2 provides, in part:

"Need. The money, property or other resources available to the person, including support available from legally responsible relatives, must be insufficient to meet the costs of necessary care, as defined by standards established in accordance with Section 7—2 of this Article." (Ill. Rev. Stat. 1981, ch. 23, par. 7—1.2.)

Section 7—2 provides, in part:

"Amount of aid—Standards. The person shall be given such care as may be necessary and proper ***.

The amount and nature of the care provided shall be determined in accordance with a uniform standard of eligibility established by the Illinois Department and its rules and regulations. *** The standard shall include provision for determining what, if any, portion of the income, property or other resources of an applicant or recipient is available to meet the cost of necessary care." Ill. Rev. Stat. 1981, ch. 23, par. 7—2.

The Department is charged with the general administration of the public aid programs. (Ill. Rev. Stat. 1981, ch. 23, par. 12—1.) Section 12—13 of the Code authorizes the Department to "make all rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of this Code ***." Ill. Rev. Stat. 1981, ch. 23, par. 12—13.

Several Department regulations governing the AMI program are

relevant here. Financial eligibility for AMI is determined by the amount of the applicant's "non-exempt assets." "Exempt assets," which are not considered in determining eligibility, include "homestead property, household furnishings, clothing and personal effects and one motor vehicle if the equity value does not exceed $1,500.00." (Department Gen. Asst. Man. PO−505.) To be eligible for AMI, a single person such as plaintiff, not living with a spouse or dependent child, must not have available to them more than $400 in nonexempt assets (the "asset disregard" level).

The Department has, as a part of its financial eligibility requirements, enacted regulations which allow an applicant found to have assets in excess of the appropriate "disregard" to reduce his or her excess assets so as to become eligible for AMI benefits. Although the record is not completely clear as to the specific ramifications of this asset-reduction policy, the record contains "Downstate General Assistance Manual Release No. 83.2," which states that it "clarified" AMI policy. Therein it is provided:

"Excess assets may be reduced to the appropriate disregard before eligibility is determined without affecting AMI eligibility.

Eligibility for AMI does not exist when assets are in excess of the disregard. If excess assets exist on the day of decision, deny the application. If during the established period assets exceed the disregard, immediately cancel the case.

Eligibility for one month backdating only exists if the case is approved and backdating is requested. For the month for which backdating is requested, if assets are within the allowable disregard for at least one day of the month, backdating may be provided for the requested month.

If backdating is requested and assets are not reduced for the requested month but are reduced for at least one day during the month of application and following month(s), eligibility exists beginning with the month of application. If backdating is not requested and the case has excess assets that are reduced to the disregard for at least one day of the month of application and following months, eligibility exists beginning with the month of application.

Example: The application date is 5-4-82 and 1 month backdating is requested. Excess assets were reduced on 4-26-82 and remain less than the disregard. The date of decision is 6-15-82. Medical eligibility can be backdated to 4-1-82."

Plaintiff first argues that the Department's determination that she was ineligible for benefits under the AMI program is against the

manifest weight of the evidence.

Section 7—1.2 of the Code provides that in ascertaining the eligibility of AMI applicants, "[t]he money, property, or other resources *available* to the person" (emphasis added), must be considered. As noted, the Department here determined that Wlandis' "gift" to plaintiff of approximately $5,000 constituted "resources available" to her.

█ Plaintiff contends that, as a matter of law, no gift was here made. It is plaintiff's position that in the absence of evidence of each of the elements of an "inter vivos gift" the Department's decision must be reversed. We do not agree. The findings of fact by an administrative agency are *prima facie* correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Those findings will be set aside only when they are found to be against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) In the present case Wlandis provided uncontradicted documentary and oral evidence that the money in his bank account was a gift available to petitioner for payment of her medical bills. Thus, the Department's finding that the money constituted "resources available" to plaintiff is not against the manifest weight of the evidence. Under these circumstances, we cannot agree with plaintiff's position that the Department had the burden of proving that a valid *inter vivos* gift was, in fact, made to plaintiff.

Plaintiff next contends that the Department's asset policy is contrary to provisions of the Code. As noted, the Department determines financial eligibility on the basis of the applicant's "non-exempt assets." Plaintiff contends that sections 7—1.2 and 7—2 of the Code require the Department, in evaluating an applicant's eligibility for assistance, to consider the applicant's "net" assets; that is, the difference between the applicant's assets and the applicant's outstanding medical bills.

Plaintiff relies on her interpretation of the following statutory language. Section 7—1.2 provides that "[t]he *** resources available to the person *** must be insufficient to meet the costs of necessary care, as defined by standards established in accordance with Section 7—2 of this Article." (Ill. Rev. Stat. 1981, ch. 23, par. 7—1.2.) Section 7—2 provides that "[t]he person shall be given such care as may be necessary and proper ***" and "[t]he amount and nature of care provided shall be determined in accordance with a uniform standard of eligibility established by the [Department]" and that "[t]he standard shall include provision for determining what, if any, portion of the income, property or other resources of an applicant *** is available to meet the cost of necessary care." Ill. Rev. Stat. 1981, ch. 23, par. 7—2.

■ Plaintiff argues that the above-stated statutory language evidences an intent by the legislature to require the Department to consider not just an applicant's assets, but also the applicant's medical needs or bills. We agree with plaintiff, but we find that the Department's policies, including the asset-reduction policy, do so include consideration of the applicant's net assets. In the event that an applicant is found to be ineligible due to excess assets, the asset-reduction policy permits the applicant to apply the excess assets to the outstanding medical bills and, thereby, become eligible for benefits. In such manner the applicant's medical bills, as well as assets, are made a part of the AMI eligibility scheme.

Plaintiff's final contention is that the Department's asset-reduction policy is applied in an unconstitutional manner. She alleges that the Department does not require caseworkers to advise applicants who are found to have excess assets that they have the option of reducing their assets to the appropriate "disregard." She states that in the instant case she was never told of the asset-reduction policy. Neither in the trial court nor in this court has the Department disputed these allegations.

Plaintiff argues that the Department is required to advise applicants of the Department's asset-reduction policy, because a failure to do so results in arbitrary denials of aid to applicants who would otherwise be eligible if they were aware of the opportunity to reduce their assets pursuant to the Department's policy. Curiously, the Department has not responded to this contention.

The United States Supreme Court has held that welfare agencies are duty bound to advise applicants of the eligibility standards employed by the agency.

> "*** the agency must, at a minimum, let the standard be generally known so as to assure that it is being applied consistently and so as to avoid both the reality and the appearance of arbitrary denial of benefits to potential beneficiaries." *Morton v. Ruiz* (1974), 415 U.S. 199, 231, 39 L. Ed. 2d 270, 292, 94 S. Ct. 1055, 1072.

■ Due process requires an evenhanded application of eligibility standards. In upholding a district court's determination that a welfare agency had administered a "clothing allowance program" without any standards, constituting a violation of due process, the Seventh Circuit Court of Appeals held:

> "In the context of eligibility for welfare assistance, due process requires at least that the assistance program be administered in such a way as to insure fairness and to avoid the risk

of arbitrary decision making. [Citations.] Typically this requirement is met through the adoption and implementation of ascertainable standards of eligibility. The record in the instant case demonstrates that the defendants employed no system or method designed to inform members of the plaintiff class of their right to a clothing allowance as a part of their General Assistance grant. Further, defendants neither issued an Official Bulletin nor utilized any administrative guidelines governing eligibility determinations for the 'as needed' program pertaining to unemployed recipients. In short, it is readily apparent from the record that prior to August 1, 1976, an unemployed recipient could have received a clothing allowance benefit only upon the making of an application for a benefit of which the applicant was unaware, and upon favorable action with respect to the application by the defendants without reference to any standards of eligibility. The district court correctly found that the clothing allowance benefit was administered in a manner inconsistent with the requirements of due process." (*Carey v. Quern* (7th Cir. 1978), 588 F.2d 230, 232. See also *Metcalf v. Trainor* (N.D. Ill. 1976), 472 F. Supp. 576; *Giacone v. Schweiker* (7th Cir. 1981), 656 F.2d 1238.)

In the instant case, we believe the Department's failure to advise plaintiff of the Department's asset-reduction policy likewise violated her due process rights.

We also find that the failure to advise applicants of the asset-reduction policy results in a further infirmity. At oral argument, counsel for the Department advised that in the event an applicant is found ineligible for AMI benefits due to excess assets, the applicant is forever barred from benefits as to all medical bills then outstanding, even if the applicant reapplies and is subsequently found to be eligible for benefits because the excess assets have been appropriately reduced. Thus, for example, in plaintiff's case she claimed outstanding medical bills of $15,000 at the time of her application. Were she to now apply the $5,000 Wlandis gift to those bills (thereby reducing her medical bills to some $10,000 and presumably making her eligible for AMI benefits), it is apparently the Department's position that she is ineligible for assistance for the $10,000 worth of medical bills because they were incurred at a time when she was not eligible for AMI. Only in the event that plaintiff had reduced her excess assets within one month of her initial application for benefits would the Department have found her to be eligible for aid as to her previously incurred bills. In *Drogolewicz v. Quern* (1979), 74 Ill. App. 3d 862, 393 N.E.2d

1212, the court struck down a department regulation which mandated disqualification from Medicaid benefits to any person found to have transferred property in order to "obtain or increase his aid" under Medicaid from a period of "five years from the date of the transfer or until its value is reacquired." (74 Ill. App. 3d 862, 863.) While the court's holding was premised on its determination that the regulation violated provisions of the Federal Social Security Act, which is not here applicable, we find the court's rationale relevant. Although the court recognized the State's right to "constitutionally prohibit a benefit seeking motive in a Medicaid applicant's divestment of property" (74 Ill. App. 3d 862, 869), the court held the blanket five-year disqualification improper.

"By arbitrarily deeming the transferred asset continually available over a five-year period to pay an applicant's medical bill, instead of 'applying' it to the medical bill, the asset is 'overevaluated'. It inflates the value of the asset out of proportion to the applicant's actual income and resources, to the amount of the medical bill.

*** . Nonavailable assets cannot be deemed available, and the availability of specific assets cannot be given a currency beyond their actual value by a failure to apply their worth to the debt in question." 74 Ill. App. 3d 862, 869.

We believe that the Department's failure to advise applicants of the asset-reduction policy can likewise result in an overevaluation of assets in those cases where the amount of an applicant's "excess assets" are exceeded by the amount of the applicant's outstanding medical bills. Only when the Department advises the applicant of the asset-reduction policy, thereby allowing the applicant the opportunity to apply his excess assets to the then outstanding medical bills, is the policy fairly administered.

We find that in the present case the Department violated plaintiff's due process rights by failing to advise her of its asset-reduction policy, thus precluding her from availing herself of the opportunity to become eligible for AMI benefits. Under these circumstances, we believe that fundamental fairness requires that plaintiff be afforded a chance to apply anew for benefits. In the event plaintiff applies for AMI benefits, the Department is ordered to process her application pursuant to all applicable regulations, and as if no prior application nor prior determination of ineligibility had been made. (See, *e.g., Creamer v. Police Pension Fund Board* (1978), 69 Ill. App. 3d 792, 387 N.E.2d 711.) The trial court's order affirming the Department's decision is reversed; the Department's determination of ineligibility is

vacated, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with instructions.

HARTMAN, P.J., and DOWNING*, J., concur.

*Justice Downing participated in the decision of the above-captioned case before the expiration of his term in office.