CHRISTOPHER HESSION, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID et al., Defendants-Appellees.

First District (4th Division)   No. 86—0607

Opinion filed November 19, 1987.

Martin Z. Craig, Barry J. Novak, and Charles R. Goldstein, all of Hayt, Hayt & Landau, of Evanston, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Karen Konieczny, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Christopher Hession (Hession) requested that the Illinois Department of Public Aid (the IDPA) provide him medical assistance for certain medical bills he incurred during a three-month stay at a

Chicago hospital in 1982. The IDPA denied his application following evidentiary hearings, and Hession filed an action for administrative review in the circuit court of Cook County. The trial court affirmed the IDPA's decision to deny medical assistance to Hession for his medical bills with respect to the first month of his hospital stay, but reversed the IDPA's decision denying assistance with regard to the second and third months. Hession appeals.

On review, the question presented is whether the IDPA should have granted Hession's application for medical assistance relating to his first month's medical bills. The IDPA denied this request on the ground that Hession had approximately $400 in savings above the appropriate eligibility limit. Hession's medical bills for the first month amounted to about $16,000. He argues that the IDPA should have offset his $16,000 medical bills by $400, the amount of his excess savings, and that the IDPA should have provided him medical assistance for the remaining $15,600 in bills. This offset, which Hession and the IDPA refer to herein as a "resource spend down" is, according to Hession, required by pertinent Federal and State statutes and regulations, and equal protection of the law under the United States and Illinois Constitutions.

■■ We find that the IDPA should have applied resource spend down to determine Hessions' eligibility for medical assistance for his first month's medical bills. In view of this conclusion, we reverse the order of the trial court and the decision of the IDPA, and remand the matter to the IDPA for further consideration consistent with the views expressed herein.

BACKGROUND

Hession was hospitalized in Chicago from October 7, 1982, to December 5, 1982. He applied for medical assistance with the IDPA on November 8, 1982. At the time of his application, Hession's only asset was his savings account, which contained $1,953.05. His total medical bills, for which he requested assistance, amounted to over $38,000.

The IDPA denied Hession's request for medical assistance on the ground that "the value of [his] assets exceed[ed] the amount allowable by agency standards." Thereafter Hession filed an action for administrative review of the IDPA's denial of his application for medical assistance. Based upon *Brengola-Sorrentino v. Department of Public Aid* (1984), 129 Ill. App. 3d 566, 472 N.E.2d 877, the trial court remanded the matter to the IDPA. The court ordered further determination of whether the IDPA informed Hession, before it denied his application, that he could reduce his assets below the maximum allowed

by agency standards in order to be eligible for benefits.

Following an evidentiary hearing, the IDPA reaffirmed its denial of Hession's medical assistance application. Upon administrative review of the matter before the circuit court, the trial court affirmed in part the IDPA's decision, on the ground that Hession was not eligible for assistance in October 1982. The trial court determined that the IDPA was not required to use resource spend down, according to the provisions of pertinent Federal and State statutes and regulations, or equal protection of the law.

The trial court also reversed the IDPA's decision in part, on the basis that Hession was eligible for medical assistance in November and December 1982 because the IDPA failed to advise Hession when he applied for assistance, in November, that he could reduce his assets in order to become eligible for assistance. The IDPA does not appeal from the trial court's partial reversal of its decision. Hession appeals from the portion of the court's order that found him ineligible for assistance with respect to the medical bills he incurred in October 1982.

OPINION

Hession applied for medical assistance on the basis of eligibility under the Federal Aid to the Aged, Blind, and Disabled Program (AABD) (42 U.S.C. §1381 *et seq.* (1982)) and the Illinois Medical Assistance Program (Ill. Rev. Stat. 1983, ch. 23, par. 5—1 *et seq*). He claimed that he qualified for this assistance because he was "eligible for basic maintenance under [AABD] [because he was disabled], \*\*\* fail[ed] to qualify thereunder on the basis of need, \*\*\* [but] ha[d] insufficient income and resources to meet the costs of necessary medical care." Ill. Rev. Stat. 1983, ch. 23, par. 5—2(2).

AABD medical assistance in Illinois is a cooperative Federal-State program, regulated by the Supplemental Security Income Act (the SSI Act) (42 U.S.C. §1381 *et seq.* (1982)) and the Public Aid Code (Illinois Medical Assistance Act) (Ill. Rev. Stat. 1983, ch. 23, par. 5—1 *et seq.*), and administered in Illinois by the IDPA. (See 42 U.S.C. §§1396a(a)(5), 1396b(a) (1982); *Schweiker v. Gray Panthers* (1981), 453 U.S. 34, 69 L. Ed. 2d 460, 101 S. Ct. 2633; *Morris v. Morrow* (4th Cir. 1986), 783 F.2d 454; *State of Illinois v. Department of Health & Human Services* (7th Cir. 1985), 772 F.2d 329; *Cohen v. Quern* (N.D. Ill. 1984), 608 F. Supp. 1324.) The asset eligibility requirement for AABD medical assistance was $1,500. See Ill. Rev. Stat. 1983, ch. 23, par. 5—2(2); 89 Ill. Adm. Code 120.382(a) (1985).

The SSI Act sets forth certain elements which a State AABD medical assistance plan must contain. As relevant here, the State plan

must "include reasonable standards *** for determining eligibility for and the extent of medical assistance under the plan." (42 U.S.C. §1396a(a)(17) (1982).) These "reasonable standards" regarding eligibility for and amount of medical assistance must: (a) "provide for taking into account only such income and resources as are *** available to the applicant or recipient and *** would not be disregarded *** in determining his eligibility"; (b) "provide for reasonable evaluation of any such income or resources"; and (c) "provide for flexibility *in the application of such standards with respect to income* by taking into account *** the costs *** incurred for medical care or for any other type of remedial care recognized under State law." (Emphasis added.) 42 U.S.C. §1396a(a)(17)(B), (a)(17)(C), (a)(17)(D) (1982).

Between 1972 and 1980, both the United States Department of Health and Human Services (the HHS) and the IDPA permitted an applicant's reduction in the amount of his assistance by the amount appearing in his nonexempt assets above the $1,500 limitation (the resource spend down). In 1980, the HHS's Health Care Financing Administration (the HCFA) issued an administrative interpretation of section 1396a(a)(17) of the SSI Act, to the effect that resource spend down was not permissible under that provision. (Medicaid Action Transmittal No. 80—58, August 1980.) The IDPA modified its position, to eliminate resource spend down, effective February 1982. See IDPA AABD Manual PO—620.3a.

Hession argues that the IDPA should have applied resource spend down to his request for medical assistance. He maintains that the Illinois Public Aid Code calls for resource spend down and notes that the IDPA applied such a procedure prior to 1982. IDPA responds that its regulations must conform to interpretations of the SSI Act announced by the HHS. IDPA asserts that it is therefore obligated to adhere to the HCFA's action transmittal order in which HCFA stated its view that the SSI Act does not permit resource spend down and advised State agencies to discontinue its use.

Relying upon recent decisions from other jurisdictions, Hession argues that the HCFA transmittal order is an erroneous interpretation of section 1396a(a)(17) of the SSI Act. (*Haley v. Commissioners of Public Welfare* (1985), 394 Mass. 466, 476 N.E.2d 572; *Walter O. Boswell Memorial Hospital, Inc. v. Yavapai County* (1986), 148 Ariz. 385, 714 P.2d 878 (appellate court).) In *Haley*, the Massachusetts Supreme Court reasoned that HCFA's action transmittal No. 80—58 "should not be accorded great deference" (394 Mass. at 474, 476 N.E.2d at 578), because it constituted "a clear departure from HCFA's prior view *** [without any] concurrent change in the applicable statutes

and regulations." (394 Mass. at 474, 476 N.E.2d at 578.) The court therefore determined to undertake its own independent analysis of the SSI Act and applicable Federal regulations adopted pursuant thereto.

■ In considering the pertinent Federal statutes and regulations, the *Haley* court concluded that the SSI Act does not "clearly and unambiguously preclude resource spend down." (394 Mass. at 474, 476 N.E.2d at 578.) The court noted that the Act "requires that eligibility determinations 'provide for reasonable evaluation of any [nonexempt] income or resources' 42 U.S.C. sec. 1396a(a)(17)(C)" and that the State administering agency "determine eligibility in a manner 'consistent with the objectives of [the SSI Act].' 42 U.S.C. sec. 1396a(a)(17)(A)." (394 Mass. at 474-75, 476 N.E.2d at 578.) Based upon this statutory language, the court concluded, the SSI Act's clause "requiring 'flexibility in the application of such standards with respect to income· by taking into account *** the costs *** incurred for medical care *** recognized under State law' 42 U.S.C. sec. 1396a(a)(17)(D)," although not specifically referring to an applicant's resources, does not "preclude a resource spend down." 394 Mass. at 474, 476 N.E.2d at 578.

The *Haley* court observed that "the ambiguity in the statute is also evidenced by the HHS's and HCFA's actions." (394 Mass. at 475, 476 N.E.2d at 578.) The court noted that regulations adopted by HHS "substantially track the underlying statute. See 42 C.F.R. secs. 435.840, 435.841 (1984)." (394 Mass. at 475, 476 N.E.2d at 578.) It also noted that "[p]rior to medicaid action transmittal No. 80—58, HCFA interpreted the statute and regulations as permitting a resource spend down." 394 Mass. at 475, 476 N.E.2d at 578.

The court in *Haley* next determined that resource spend down is consistent with the SSI Act. The court reasoned:

"[The SSI Act] was 'designed to liberalize Federal law under which States operate their medical assistance programs so as to make medical services for the needy more generally available.' S. Rep No. 404, 89th Cong., 1st Sess., reprinted in 1975 U.S. Code Cong. & Ad. News 1943, 2014 (hereinafter S. Rep.). To fulfil this goal, Congress sought to ensure eligibility to individuals with income and· resources which prevented eligibility for other programs when the income and resources were exceeded by incurred medical costs. See 42 U.S.C. sec. 1396a(a)(17); S. Rep. at 2017-2020, 2147. A State must 'take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary) are ac-

tually available to the applicant or recipient and as would not be disregarded (or set aside for future needs).' S. Rep. at 2018. A State may not 'require the use of income or resources which would bring the individual's income below the amount established as the test of eligibility under the State plan. Such action would reduce the individual below the level determined by the State as necessary for his maintenance.' S. Rep. at 2019. We conclude that, although Congress did not require use of a resource spend down, such use is a reasonable method of evaluating resources." 394 Mass. at 475-76, 476 N.E.2d at 578.

The *Haley* court then found that the pertinent Massachusetts statute required resource spend down. 394 Mass. at 476, 476 N.E.2d at 579.

■ We agree with the Massachusetts Supreme Court's analysis in *Haley* regarding the SSI Act, and determine that section 1396a(a)(17) of the Act permits a State plan to utilize resource spend down in determining an applicant's eligibility for medical assistance benefits. The action transmittal of the HCFA is not binding authority upon this court with respect to the interpretation to be given to the SSI Act. (See, *e.g., Daughters of Miriam Center for the Aged v. Matthews* (3rd Cir. 1978), 590 F.2d 1250; *Haley*, 394 Mass. at 471-72, 476 N.E.2d at 575; *cf., Central Illinois Public Service Co. v. Pollution Control Board* (1987), 116 Ill. 2d 397.) Furthermore, the SSI Act does not prohibit a State's use of resource spend down, and a State's adoption of such a procedure would be in conformity with the purpose and spirit of the Act. See 42 U.S.C. §1396a(a)(17); S. Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Admin. News 1943, 2014; H.R. Rep. No. 213, 89th Cong., 1st Sess. 67 (1965); *Haley*, 394 Mass. at 475, 476 N.E.2d at 578; *Walter O. Boswell Memorial Hospital, Inc. v. Yavapai County* (1986), 148 Ariz. 385, 714 P.2d 878.

■ We also find that the Illinois Public Aid Code requires the IDPA to utilize resource spend down with regard to Hession's request for AABD medical assistance benefits. The stated purpose of Illinois' Medical Assistance Act is "to provide a program of essential medical care and rehabilitative services for *** persons who are unable, because of inadequate *resources*, to meet their essential medical needs." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 23, par. 5—1.) The Code specifically notes, "For persons who are medically indigent but otherwise able to provide themselves with a livelihood, it is of special importance to maintain their incentives for continued independence and preserve their limited *resources* for ordinary maintenance needs to

prevent their total or substantial dependency." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 23, par. 5—1.

Also, the Code defines as eligible for medical assistance those persons who, *inter alia*, are eligible for AABD basic maintenance "but who fail to qualify thereunder on the basis of need, and who have insufficient income and *resources* to meet the costs of necessary medical care." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 23, par. 5—2(2).) It further provides that "[i]n determining eligibility for medical assistance, for which federal reimbursement is available under the [SSI Act], the assets of a single person not exceeding $1,500 *** shall be disregarded." (Ill. Rev. Stat. 1983, ch. 23, par. 5—2(6)(c).) Similarly, the IDPA's regulations state in pertinent part that the "amount a recipient unit is to pay toward its medical expenses is the sum of that unit's nonexempt income and assets minus the amount of the appropriate medical assistance standard." 89 Ill. Admin. Code 120.395 (1985).

In our view, to preclude resource spend down places an applicant in the "paradoxical" position of being obligated to use excess resources to pay down medical bills during a period of hospitalization wherein the applicant may be in no physical or mental condition to do so; "[t]his result would occur regardless of how miniscule the excess resources were in comparison to the medical expenses incurred." *Haley*, 394 Mass. at 476 n.8, 476 N.E.2d at 579 n.8.

"An individual's qualification for benefits should not be dependent upon the fortuitous circumstances of his being advised or being physically capable to make the actual expenditure." (*Walter O. Boswell Memorial Hospital, Inc. v. Yavapai County* (1986), 148 Ariz. 385, 390, 714 P.2d 878, 883.) Given the purpose of both the SSI Act and the Illinois Medical Assistance Program is to provide assistance to those individuals who are aged, blind, or disabled and "have insufficient income and resources to meet the costs of necessary medical care" (Ill. Rev. Stat. 1983, ch. 23, par. 5—2(2); see also 42 U.S.C. §1396a(a)(17)), we find that the "unreasonableness" of the IDPA's position is "self-evident" (*Haley*, 394 Mass. at 476 n.8, 476 N.E.2d at 579 n.8).

In view of these considerations, we determine that the Illinois Public Aid Code requires that the IDPA take into account an AABD applicant's resources, as well as income, in determining the applicant's eligibility for medical assistance, and that the IDPA apply resource spend down in determining the amount of assistance to which the applicant is entitled. (*Cf. Brengola-Sorrentino v. Department of Public Aid* (1984), 129 Ill. App. 3d 566, 472 N.E.2d 877; *Drogolewicz v. Quern* (1979), 74 Ill. App. 3d 862, 393 N.E.2d 1212.) As a result,

the IDPA should have applied resource spend down in determining Hession's eligibility for AABD medical assistance with respect to his first month's medical bills.

In light of these conclusions, we do not address Hessions' remaining arguments.

For the reasons stated, the order of the circuit court of Cook County and the decision of the IDPA are reversed, and the cause remanded to the IDPA for further consideration consistent with the views expressed herein.

Reversed and remanded.

LINN and JOHNSON, JJ., concur.