[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal pursuant to Connecticut General Statutes Section 4-183 as authorized by Connecticut General Statutes Section 17-2b. Section 4-183
provides as follows:
 A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section.
Connecticut General Statutes Section 17-2b(b) provides as follows: CT Page 9342
 The applicant for (an administrative fair hearing), if aggrieved, may appeal therefrom in accordance with Section 4-183.
The parties do not dispute the fact that the petitioner, Carmela Apicelli, is an aggrieved party.
Many of the facts that give rise to this appeal, as found on the record below and as stated in the petitioner's brief, are not in dispute. This is an appeal by Carmela Apicelli from the decision of the Fair Hearing Officer, upholding the decision of the Department of Income Maintenance (hereinafter referred to as Department) which denied the plaintiff Medicaid benefits for the period from February 9, 1990 until August 31, 1990. The plaintiff seeks to have this court order the Department to effectuate procedures to apply a "resource spend down" in all pending Medicaid applications and to specifically apply such in her case. The plaintiff further seeks to have her case remanded to the Department to apply the resource spend down and determine the appropriate period of time during which additional Medicaid benefits are due.
The plaintiff, Carmela Apicelli, is a 92-year-old lady currently residing in the Bayview Health Care Center in Waterford, Connecticut. She entered that facility on September 12, 1989. Plaintiff's son, Amedeo Apicelli, holds a Power of Attorney from his mother and handles her financial affairs. On February 6, 1990, he filed an application for Title XIX benefits on his mother's behalf. This application was received in the Department of Income Maintenance in Norwich, Connecticut on February 9, 1990.
The record reveals that Mr. Apicelli made payments to Bayview Health Center on his mother's behalf through May 3, 1990, which left a balance in Mrs. Apicelli's savings account on that date of $2,420.21. The decision below indicates assets of $3,108.44 as of August 6, 1990. In contrast, Bayview Health Center was owed, as of the date of the hearing, September 24, 1990, back payments in the amount of approximately $28,000.00. The balance of Mrs. Apicelli's bank account was eventually actually expended by her son and medicaid assistance was granted effective September 1, 1990.
While Medicaid has paid Bayview Health Care Center's bills since the beginning of September 1990, a nursing home bills remains in excess of $20,000.00. It appears to cover care rendered to Mrs. Apicelli for the months of April, May, June, July, and August, 1990. If a resource spend down had been applied in this case, plaintiff would have been entitled to Medicaid benefits for those months. CT Page 9343
A. The Fair Hearing
A Fair Hearing was held on September 24, 1990. Those present included Amedeo Apicelli, Mrs. Apicelli's son; Linda Kidder, Mrs. Apicelli's attorney; and Donna Hunter, Director of Social Services at Bayview Health Care Center. Mrs. Apicelli's presence at the hearing was waived by the hearing officer.
The Fair Hearing Officer made the following finding of fact.
1. The appellant applied for Medicaid on 2/9/90.
2. On 7/2/90 that application was denied based on the Department's determination that the appellant had "improperly" disposed of her assets, however, the Department formally denied the application due to excess assets.
3. The Department subsequently reversed its decision regarding the "improper" transfer of assets, granted assistance to the appellant and discontinued that assistance, effective 8/31/90, due to excess assets.
4. The appellant had more than $1600 available to her in her bank account from 2/9/90 through 8/31/90.
5. The appellant was ineligible for Medicaid from 2/9/90 through 8/31/90.
The Fair Hearing Officer also found that the following sections of the State of Connecticut Department of Income Maintenance Uniform Policy Manual contains the policy that governs the administration of the MAABD program with the following sections pertaining to this case:
5035.20 page 2 B. 5. post-eligibility deductions for LTCF units without community spouses.
4000.02 p. 3 — definitions of equity value and encumbrance.
4005.10 the asset limit for Medicaid (MAABD) for one person is $1600.
4005.15 A. 2 At the time of application, the assistance unit ineligible until the first day of the month in which it reduces its equity in counted assets to within the asset limit. CT Page 9344
Section 5035.20 B 5 regarding post-eligibility deductions for long term care facilities for persons who do not have a spouse provides as follows:
 5. expenses for services provided by a licensed medical provider in the six month period immediately preceding the first month of eligibility providing the following conditions are met:
Section 4000.01 of definitions defines equity value and encumbrances as follows:
 Equity value is fair market value minus encumbrances.
Encumbrance
 Encumbrance is a legal claim against an asset which a person must pay off in order to convert the asset to cash.
The record shows that the hearing officer summarized the presentation made by counsel on behalf of the petitioner as follows:
 The appellant's attorney further argued that the Department has discretion when it looks at assets to consider liabilities when determining the equity value of an individual's assets. Since the appellant does owe the nursing home more money than she has, the Department should not consider her bank account balance to be excess assets. "An offset of those two amounts should be allowed, since her nursing home bill is an enforceable liability."
The Fair Hearing Officer rejected the plaintiff's argument, stating:
 The evidence and testimony presented in the hearing clearly proved that the appellant had more than $1,600 available to her from the date of her application for medicaid through 8/31/90. She was, therefore, ineligible for Medicaid whether or not she knew it. Even if I accepted that no one told the appellant's son about the effect of excess assets on his mother's eligibility, I CT Page 9345 could not find that she was eligible because neither she nor he was told otherwise.
 There is simply no provision in federal or state Medicaid regulations for granting assistance to individuals whose available assets exceed program limits.
 In spite of the argument of the appellant's attorney that she has no equity in her bank account as of April 1990, because of her nursing home bill, the Department's definition of equity value is binding and does not allow for an interpretation that would give the appellant the relief her attorney seeks. No claim was filed by the nursing home against the appellant's bank account, so the nursing home bill cannot be considered an encumbrance, according to policy.
The petitioner claims that the Department erred as a mater of law in denying benefits to the plaintiff since her incurred medical bills were greater than the amount by which her assets exceeded the $1600 eligibility limit, arguing that Connecticut is required to employ a "resource spend down" in determining Medicaid eligibility.
LAW
In discussing the Social Security Act, the court in Gnutti v. Heintz, 206 Conn. 628, 634 (1988) stated in part as follows:
 This court, however, has had little experience in interpreting Social Security statutes and regulations, and, therefore, it would be somewhat presumptuous for us to reject Rousseau. According to the United States Supreme Court, "(t)he Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act almost unintelligible to the uninitiated.' Friedman v. Berger, 547 F.2d 724, 727 n. 7 (2d Cir. 1976), cert. denied, 430 U.S. 984
(97 S.Ct. 1681, 52 L.Ed.2d 378) (1977)." Schweiker v. Gray Panthers, supra, 43. "(T)he Medicaid program is a morass of bureaucratic complexity . . . ." Herweg v. ray, CT Page 9346 455 U.S. 265, 279, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982) (Burger, C.J., dissenting).
 The defendant has sought to distinguish this case from Rousseau. Rhode Island is an "SSI" state that employs the same financial eligibility standard in its Medicaid programs that the Social Security Administration uses in its SSI program. On the otherhand, Connecticut is a "Section 209(b)" state, and is somewhat more restrictive than SSI in terms of financial eligibility.[1] 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.121; Schweiker v. Gray Panthers, 453 U.S. 34, 38, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).
A number of other Connecticut cases have discussed the Medicaid statute.
In Clark v. Commission, 209 Conn. 390 (1988) the issue was whether income "available" to an institutionalized incompetent for Medicaid eligibility purposes includes an amount a Probate Court has ordered the incompetent to pay his at-home spouse.
The Clark court at pages 394, 396, 397, 403, stated in part as follows:
 . . . The federal medicaid program, established by Congress in 1965, "provid(es) federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784, reh. denied, 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980); 42 U.S.C. § 1396 et seq. Although states participate voluntarily, a state electing to participate must develop a plan, approved by the secretary of health and human services, containing "reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . ." 42 U.S.C. § 1396a(a)(17). . .
 . . . The legislature, by General Statutes Section 17-134a, has authorized the commissioner of income maintenance to CT Page 9347 administer Connecticut's medicaid program. Our statutes further provide that "(a)ll of the provisions of this chapter are extended to the medical assistance program except such provisions as are inconsistent with federal law and regulations governing title XIX of the Social Security Amendments of 1965 and this part." General Statutes Section 17-134e. "Thus, the legislature recognized the primacy of the applicable federal Provisions and this court must be guided by those provisions. Stated in another way, the federal statutes and regulations set a limit upon the authority of the commissioner as well as furnishing a guide to his administration of the program. Morgan v. White, 168 Conn. 336, 343-44, 362 A.2d 505 (1975). (emphasis provided)
B. History of Section 209(b) Option
The history of the so-called Section 209(b) option, as stated in Schweiker v. Gray Panthers, 453 U.S. 34, 38-39,101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) is as follows:
 In 1972, Congress replaced three of the four categorical assistance programs with a new program called Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 et seq., Pub.L. 92-603, 86 Stat. 1465. Under SSI, the Federal Government displaced the States by assuming responsibility for both funding payments and setting standards of need. In some States the number of individuals eligible for SSI assistance was significantly larger than the number eligible under the earlier, state-run categorical need programs.
 The expansion of general welfare accomplished by SSI protended increased Medicaid obligations for some State because Congress retained the requirement that all recipients of categorical welfare assistance — now SSI — were entitled to Medicaid. Congress feared that these States would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance. "(I)n order not to CT Page 9348 impose a substantial fiscal burden on these States" or discourage them from participating, see S. Rep. No. 93-553, p. 56 (1973), Congress offered what has become known as the "Section 209(b) option". Under it, States could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. States thus became either "SSI States" or "Section 209(b) States" depending on the coverage that they offered. States exercising the Section 209(b) option were required to adopt a "spend-down" provision. See ibid. Under it, an individual otherwise eligible for SSI but whose income exceeded the state standard could become eligible for medicaid when that part of his income in excess of the standard was consumed by expenses for medical care. Ibid. (emphasis provided)
In referring to "209(b) option" the court in Clark v. Commission, 209 Conn. 390, 395 (1988) in note 4 stated in part as follows:
 Congress enacted this section, called the "209(b) option", in order to encourage states to continue participating in the program. The option allows the states to retain their eligibility standards as of January 1, 1972, but disallows them from setting lower standards. Connecticut has elected the "209(b) option".
C. Standard of Review
In discussing the standing of judicial review of administrative agency rulings the court in State Medical Society v. Board of Examiners of Podiatry, 208 Conn. 709, 717 (1988) stated in part as follows:
 The standard of judicial review of administrative agency rulings is well established. Section 4-183(g) permits modification or reversal of an agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in CT Page 9349 violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or question of fact. . .
 . . . On the other hand, it is the function of the courts to expound and apply governing principles of law . . . . (Citations omitted). This case presents a question of law turning upon the interpretation of a statute. See Brannigan v. Administrator, 139 Conn. 572, 577, 95 A.2d 798 (1953); Bridgeport v. United Illuminating Co., 131 Conn. 368, 371, 40 A.2d 272 (1944). Both the board and the trial court had to construe Section 20-50 to determine the permissible scope of podiatry practice in Connecticut. In our view, this is purely a question of law, requiring that the intent of the legislature be discerned. Such a question invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 5, 434 A.2d 293 (1980).
The dispositive issue before the court is whether the Department of Income Maintenance erred as a matter of law in denying benefits to the plaintiff, since her incurred medical bills were greater than the amount by which her assets exceeded the $1,600 eligibility limit. The plaintiff makes the following three arguments in support of this claim.
1. The Department of Income Maintenance erred in denying plaintiff benefits because Connecticut is required to employ a "Resource Spend Down" in determining Medicaid eligibility as a state which participates in Medicaid under Section 209(b), 42 U.S.C. § 1396 (a)(f). CT Page 9350
2. The Department of Income Maintenance erred in denying the plaintiff benefits because federal law requires the application of a "Resource Spend Down".
3. The Department of Income Maintenance erred in denying plaintiff benefits because Connecticut law requires that a "Resource Spend Down" be used in determining Medicaid eligibility.
These claims will be considered seriatim.
I. THE PLAINTIFF'S CLAIM THAT THE DEPARTMENT OF INCOME MAINTENANCE ERRED IN DENYING PLAINTIFF BENEFITS BECAUSE CONNECTICUT IS REQUIRED TO EMPLOY A "RESOURCE SPEND DOWN" IN DETERMINING MEDICAID ELIGIBILITY AS A STATE WHICH PARTICIPATED IN MEDICAID UNDER SECTION 209(b), 42 U.S.C. SECTION 1396(a)(f).
 42 U.S.C. § 1396a(f) provides as follows: Section 1396a. State plans for medical assistance.
(a) Contents
 A State plan for medical assistance must (f) EFFECTIVE DATE OF STATE PLAN AS DETERMINATIVE OF DUTY OF STATE TO PROVIDE MEDICAL ASSISTANCE TO AGED, BLIND, OR DISABLED INDIVIDUALS.
 Notwithstanding any other provision of this subchapter . . . no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) income of any such individual as determined CT Page 9351 in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the State or political subdivision thereof) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972 (emphasis provided)
The plaintiff argues that since Connecticut is a so-called Section 209(b) state it may not impose eligibility requirements more restrictive than those it used in 1972. The plaintiff then argues that under the Medicaid plan in effect in Connecticut on January 1, 1972, Connecticut permitted use of a "Resource Spend Down". The plaintiff argues that this claim is substantiated by a page of the Connecticut State Welfare Department Medical Assistance Program Manual addressing eligibility requirements and factors for medical assistance which page is attached to the plaintiff's brief as attachment 2. That attachment provides in part as follows:
 An applicant or recipient has resources in excess of the personal property limitation, he is ineligibly until the excess is used to meet either his medical needs or his basic needs in accordance with the Department's standards.
Attachment 2 shows that it is effective August 1, 1972. Therefore it cannot be used as a basis for claiming what the State Medicaid plan was in effect in Connecticut on January 1, 1972.
The plaintiff also cites the case of Wilczynski v. Harder, 323 F. Sup. 509 (D.C. Conn. 1971), in claiming that the Medicaid plan in effect in Connecticut on January 1, 1972 permitted use of a "Resource Spend Down".
Wilczynski involved a challenge on both constitutional and statutory grounds to the validity of the Connecticut Welfare Department regulation 1 Conn. Welfare Man. Section D-244.1 (1970). That regulation, as set out footnote 4, page 512-513, provided in part as follows:
Eligibility. Financial . . . . Any otherwise CT Page 9352 eligible person having income or resources above said levels shall be eligible for medical assistance after the excess has been first used to defray medical expenses.
Courts may take judicial notice of regulations. State v. Vachon, 140 Conn. 478, 484 (1953); Squires v. Wolcott,133 Conn. 449, 453 (1947). This court has accordingly taken judicial notice of regulation 244.1 as found in 1 Conn. Welfare Manual 1970.
The plaintiff then makes the following argument:
 In Foley v. Suter, Medicare and Medicaid Guide (CCH) paragraph 37695 (ND Ill. 1988), the U.S. District Court for the Northern District of Illinois specifically addressed the argument that, since Illinois is a Section 209(b) state which allowed a resource spend down on January 1, 1972, it must allow a resource spend down under the current statute. Adopting the report and recommendation of the Magistrate, the Court held that, since the resource spend down was not invalid under other Medicaid law, and since the elimination of the resource spend down imposed more restrictive eligibility requirements than had existed in 1972, the new regulations forbidding use of the resource spend down were invalid. The Court ordered the Illinois Department of Public Aid to implement a resource spend down procedure. Under the Foley decision, Connecticut's elimination of its prior resource spend down, in effect on January 1, 1972, is also invalid. Plaintiff respectfully asks this Court to order the Department of Income Maintenance to implement are source spend down procedure and asks that this procedure be applied in her case.
The court is not persuaded by that argument.
The Foley case relied on by the plaintiff stated in part as follows:
 Resource spend down is also consistent with the Illinois statutory scheme effectuating the Medicaid policies in this state . . . CT Page 9353 Moreover, the defendants' "differential treatment" argument has been rejected by at least two other courts. Haley v. Commissioner of Public Welfare, 394 Mass. 466, 477-75, 476 N.E.2d 572 (1985), Hession, 163 Ill. App.3d 373, 516 N.E.2d 820. The courts in Haley and Hession determined that Massachusetts and Illinois, as Section 209(b) states, are required under their own laws to implement a resource spend down procedure.
This court finds that the Foley case as well as the Haley and Hession cases, are distinguishable in that Connecticut law does not require the implementation of a resource spend down procedure. Section III of this decision, infra, discusses the rationale of this conclusion.
This court further holds that the provision in 1 Conn. Welfare Man. Section D-244.1 (1970) allowing an otherwise eligible person having income or resources above the allowed levels to be eligible for medical assistance after the excess has been first used to defray medical expenses does not constitute an eligibility standard. It is true that the "209(b) option" disallows states from setting lower eligibility standards. Clark v. Commissioner, supra, 395. In DeJesus v. Perales, 770 F.2d 316, 326 (2nd Cir. 1985), in discussing the "same methodology" language found in42 U.S.C. § 1396a(a)(10)-(C)(i)(III) the court stated in part as follows:
 The Secretary's reading is by no means implausible. In Medicaid lingo, the spend-down is not part of the standard to be employed in determining income and resource eligibility." That standard, so far as concerns income, is whether an applicant's monthly income after deduction of various expenses (other than medical expenses) and disregards is not more than the Medicaid income level set by the state. The spend-down is not part of this standard; rather, it is the method by which a family that does not meet the standard can nonetheless bring its excess income down to the level required for inclusion in the Medicaid program. (emphasis provided)
The same rationale in DeJesus that concluded that spend-down is not a part of the standard as it relates to income under the "same methodology" provision of the Medicaid statute CT Page 9354 would also logically apply/spend-down as it relates to resource eligibility. Since spend-down is not part of the eligibility standard to be employed in determining resource eligibility, there is no requirement resulting from the "209(b) option" from having a different resource spend down provision at this time than existed on January 1, 1972.
In the event "spend down" is part of the eligibility standard, the plaintiff still could not prevail. The spend down provision in Section 1396a(f) does not require a state to provide medical assistance "unless such state would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972 been in effect in such month". The months in question for which the plaintiff is claiming medical coverage are the months of April through August, 1990. The test to be applied is whether Connecticut would have been required to provide medical assistance for those months if its approved plan that was in effect on January 1, 1972 had been in effect for the period of April through August, 1990. Section 17-134e provides in part that "all of the provisions of this chapter are extended to the medical assistance program except such provisions as are inconsistent with federal law and regulations governing Title XIX of the Social Security Amendments of 1965 and this part" Thus, the legislature recognize the primacy of the applicable federal provision and this court must be guided by those Stated in another way, the federal statutes and regulations set a limit upon the authority of the commissioner was well as furnishing a guide to his administration of the I program. Clark v. Commissioner, 209 Conn. 390, 396-97 (1988).
The department, as the state agency responsible for administering the Medicaid program in Connecticut, is required to follow a plan consistent with the requirements of Title XIX and the regulations promulgated thereunder by the Secretary of Health and Human Resources (HHR). 42 U.S.C. § 1396. Marcus' Appeal from Probate, 199 Conn. 524, 532 (1986). Clark v. Commissioner, 209 Conn. 390, 394 (1988). The 1990 plan approved by the commissioner for Connecticut does not include a "resource spend down" provision such as is found in the 1972 plan in Section D-244.1. Would Connecticut have been required to provide medical assistance to the plaintiff if Section D-244.1 from the 1970 plan was still in effect in 1990? This court concludes that the answer to that question is no. The plaintiff has referred to Medicaid transmittal #80-58, dated August, 1990. That same transmittal was also referred to in Foley, Haley, and Hession. That transmittal states in part as follows: CT Page 9355
 The current page 6 of ATTACHMENT 2.6C allows States to require a "spend-down" of an individual's resources, by indicating the excess liquid resources can be applied to the cost of medical care. Although section 1902(a)(17)(D) of the Social Security Act provides this option with respect to income (by taking into account incurred medical expenses), neither the Act nor Federal regulations allow for such flexibility with regard to resources. We have, therefore, eliminated this option on page 6 of ATTACHMENT 2.6-C to correct this error and reflect Federal law and regulations.
Because HHR is the administrative agency charged with executing Title XIX, its interpretation of its own regulations, is, of course, entitled to great weight, and its construction of the statute to be followed. Such deference is particularly appropriate with regard to Title XIX, since, as the Supreme Court has noted, "Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the act." Schweiker v. Gray Panthers, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640,69 L.Ed.2d 469 (1981), Hogan v. Heckler, 769 F.2d 886, 888, 892 (1985), DeJesus v. Perales, 770 F.2d 316, 327 (1985).
It is clear from that transmittal that if Section D-241.1 from the 1970 manual had been in effect in 1990 that the Department of Health and Human Services would not have approved of the resource spend down provision of that section. While a Section 209(b) option does not allow a state to set a lower standard, it does not prohibit the Department of Health and Human Services from changing its interpretation of what a state is allowed to do under applicable statutes and regulations.
The construction of the regulations in Medicaid transmittal #80-58 dated August, 1990 is consistent with the regulations that were adopted in accordance with the Medicaid statute. The Secretary adopted the first set of Medicaid regulations regarding income and resources in 34 Fed. Reg. Section 1321 (1969). Hogan v. Heckler, 769 F.2d 886, 893
(1985), DeJesus v. Perales, 770 F.2d 316, 323, Note 8 (1985). Those regulations did provide for an income spend down but did not provide for a resource spend down. Those regulations are now codified in 42 C.S.R. Section 435.831 regarding income eligibility and Section 435.845 regarding resource eligibility. Section 435.831(c) does provide for an income spend down. However there is no resource spend down provision in the regulations. CT Page 9356
This court therefore concludes that the Department did not err in denying the plaintiff benefits simply because Connecticut is a Section 209(b) state.
II. THE PLAINTIFF'S CLAIM THAT THE DEPARTMENT OF INCOME MAINTENANCE ERRED IN DENYING THE PLAINTIFF BENEFITS BECAUSE THE FEDERAL LAW REQUIRES THE APPLICATION OF A "RESOURCE SPEND DOWN".
In support of this claim the plaintiff cites Kempson v. North Carolina Department of Human Resource, 397 S.E.2d 314
(1990), Haley v. Commissioner of Public Welfare, 394 Mass. 466,476 N.E.2d 572, Harriman v. Commissioner, Maine Department of Human Resources, Docket No. 90.90-0046-B ___ F. Supp. (D.Me. Nov. 9, 1990).
The Harriman court, in discussing whether federal law requires the state to use a resource spend down rule, stated in part as follows:
 The plaintiff appears to have all the logic and policy on her side of the argument, but the State Commissioner of Human Services appears to have the law on his side, and I conclude that federal law does not require the state to use a resource spend-down rule . . . . The federal statute specifically requires the state to have an income spend-down rule. 42 U.S.C. § 1396a(a)(17)(D). But there is no similar requirements in the federal statute for a resource spend down rule . . . . I am satisfied, therefore, that the federal statute does not require states to have a resource spend-down rule. (emphasis provided)
In discussing the ruling in the Kempson case, the petitioner argues in part as follows:
 The Court agreed with the petitioner's argument that North Carolina's prohibition of a resource spend down and the requirement that a person actually spend excess reserve prior to qualifying for Medicaid, conflict with the purposes of the both federal Medicaid statute and state law. Id. The court rested its decision upon Section 1396a(a)(17)(C) which mandates that a state CT Page 9357 Medicaid plan must "provide for reasonable evaluation or any income or resources." 42 U.S.C. § 1396a(a)(17)(C) (emphasis added). In essence, the court held that an evaluation of resources must include a resource spend down in order to be reasonable. The court noted that it chose to follow the reasoning of courts in four other states in holding that a resource spend down is an allowable and reasonable method of evaluating resources. Id. at 317.
This court is similarly not persuaded by the petitioners argument regarding the holding in Kempson. This court has already noted that Kempson, Haley, and Hession involve states that required under their own laws that a resource spend down procedure be implemented. Connecticut has no such requirement. The Kempson court referred in part to42 U.S.C. § 1396a(a)(17)(C)(D). Those sections, as they relate to the contents of state plans for medical assistance, provide as follows:
 (C) Provide for reasonable evaluation of any such income or resource, and (D) . . . and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs . . . incurred for medical care or for any other type of remedial care recognized under State law.
This court respectfully disagrees with the rational in Kempson for a number of reasons. First, subsection D cited above does provide in part "except to the extent prescribed by the Secretary" regarding the flexibility in the application of standards. The Secretary has expressly prescribed the use of a resource spend down (Medicaid transmittal #80-58, dated August, 1980). Further, this court agrees with the statutory construction found in Hogan v. Heckler, 769 F.2d 886, 894 (1985) where the court in note 15 stated in part as follows:
 However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment . . . specific terms prevail over the general in the same or another statute which otherwise might be controlling. CT Page 9358
On the basis of that statutory construction, this court concludes that the specific terms found in42 U.S.C. § 1396a(a)(f) allowing for spend down of income controls over the general language of Section 1396a(a)(17)(C) and (D), and therefore "resource spend down" is not allowed by virtue of Sections (C) and (D).
This approach is consistent with the rationale in Clark v. Commissioner, 209 Conn. 390 (1988). The issue involved in Clark was whether income "available" to an institutionalized incompetent for Medicaid eligibility purpose includes an amount a Probate Court has ordered the incompetent to pay his at-home spouse.
In holding that the amount ordered to be paid to the at-home spouse was nevertheless income available to the institutionalized incompetent for Medicaid purposes, the Clark court at pages 398-402 stated in part as follows:
 The Secretary's regulations require than an "agency must reduce its payment to an institution, for services provided to an individual . . .by the amount that remains after deducting the amounts specified in paragraph (c) of this section, from the individual's income." (Emphasis added.) 42 C.F.R. § 435.832(a). Paragraph (c) specifically lists only four amounts an agency may deduct from a "medically needy" applicant's total income: (1) a personal needs allowance; (2) an at-home spousal allowance; (3) an at-home family allowance; and (4) medical or remedial expenses not paid by third parties. 42 C.F.R. § 435.832(c).
 The regulations do not mention court ordered spousal support nor any other diversions to meet either an applicant's legal or moral obligations.
Just as the regulations referred to in Clark did not mention court ordered spousal support for the purpose of reducing available income, so to the regulations in Section 1396a(a)(17)(C)and (D) do not mention the use of resources spend down. Subsection (D) only mentions income in instructing states to provide flexibility in their program application standards. While Section (C) does provide for reasonable evaluation of both income and resources, there is nothing to indicate in that language that "spend down" is required as part of such reasonable evaluation. This court therefore concludes that federal law does not require the application of a "Resource CT Page 9359 Spend Down".
III. THE PETITIONER'S CLAIM THAT THE DEPARTMENT OF INCOME MAINTENANCE ERRED IN DENYING PLAINTIFF BENEFITS BECAUSE CONNECTICUT LAW REQUIRES THAT A RESOURCE SPEND DOWN BE USED IN DETERMINING MEDICAID ELIGIBILITY.
In support of this claim the plaintiff argues in part as follows:
 A number of the above cited cases have also held that a resource spend down is required by their respective state laws. Similarly, Connecticut statutes and regulations show that a resource spend down is also required to be applied in this state. The Connecticut statute authorizing Medicaid in this state, Connecticut General Statutes Section 17-134a, incorporates by reference "all the requirements contained" in the federal statute. This includes 42 U.S.C. § 1396a(17)(cc) requiring that the evaluating resources must be reasonable. Therefore, under state law the holding of Kempson must also be applied and mandates use of a resource spend down.
The court is not persuaded by that argument.
This court does not read the requirement in Section 1396a(a)(17)(C) that a state plan provides for reasonable evaluation of any such resources as mandating the same income spend down provision found in 42 U.S.C. § 1396a(a)(f). Connecticut General Statutes Section 17-82d(c) provides as follows:
 No person shall be eligible for the state supplement program whose assets as defined by the commissioner exceed $1600 or if living with a spouse, whose combined assets exceed $2400.
The Department Uniform Policy Manual also establishes a $1600 asset limit in Section 4005.050.
In addition Connecticut General Statutes Section 17-134b captioned Eligibility provides in part as follows:
 Any income in excess of the applicable amounts shall be applied as may be required by said federal law, and assistance shall be CT Page 9360 granted for the balance of the costs of authorized medical assistance.
While federal law requires the use of an income spend down, there is no such requirement for a resource spend down. This court therefore concludes that Connecticut law does not require a "resource spend down" be used in determining Medicaid eligibility.
The appeal is ordered dismissed.
Axelrod, J.